149 F.3d 1026
 98 Cal. Daily Op. Serv. 5580, 98 Daily Journal
D.A.R. 7792
UNITED STATES of America, Plaintiff-Appellee-Cross-Appellant,
v.
Bradley Scott PHILLIPS, Defendant-Appellant- Cross-Appellee.
 Nos. 97-30046, 97-30085.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 2, 1998.
Decided July 16, 1998.
 
 Ruben L. Iniguez, Federal Public Defender, Spokane, Washington, for defendant-appellant-cross-appellee.
 Rolf H. Tangvald, Assistant United States Attorney, Spokane, Washington, for plaintiff-appellee-cross-appellant.
 Appeals from the United States District Court for the Eastern District of Washington; Wm. Fremming Nielsen, District Judge, Presiding. D.C. No. CR-95-00211-WFN.
 Before: BROWNING, SKOPIL, and O'SCANNLAIN, Circuit Judges.
 SKOPIL, Senior Circuit Judge:
 
 
 1
 Bradley Scott Phillips entered a conditional guilty plea to the charge of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1). He contends on appeal that the district court erred by denying his motion to suppress the firearm and his motion to present a justification defense. The government cross-appeals the district court's refusal to apply the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). We reject Phillips' contentions. We agree with the government that the ACCA should have been applied in sentencing Phillips. Accordingly, we affirm the conviction, vacate the sentence imposed, and remand for resentencing.
 
 I.
 
 2
 Phillips is currently serving a 100-month sentence for being a felon in possession of a firearm. There is no dispute as to his felon status--he was convicted in 1982 of two counts of second degree burglary, and again in 1985 of one count of robbery. The events relevant to Phillips' latest incarceration occurred during the night of August 22-23, 1995. Phillips explained that late that evening he went to a motel room in Spokane, Washington to purchase methamphetamine. Instead of obtaining drugs, he was beaten unconscious and robbed. When he awoke, he walked to a local bar and solicited a ride to a friend's apartment. His friend, Brenda Hutsell, was not home. By phone, Phillips located her at the home of a mutual friend, Carolyn Cosby.
 
 
 3
 Hutsell refused Phillips' request that she drive into town to let him into the apartment; Phillips threatened to drive out to Cosby's house to get Hutsell. Cosby warned Phillips that he was not welcome at her house. Notwithstanding Cosby's objection, Phillips stated that he intended to come to Cosby's house and forcibly retrieve Hutsell. Twice along the way, he stopped and made threatening phone calls to Cosby and Hutsell. Cosby called the police.
 
 
 4
 Phillips arrived at Cosby's home at midnight, entering through an open garage and side door. Cosby testified that Phillips appeared to be high on methamphetamine and was threatening. Phillips demanded that Hutsell return with him and attempted to pick her up and remove her from the residence. Cosby noticed at that point that Phillips had a handgun tucked into the back of his pants. She then unlocked and opened a door to her house in hopes that the police would soon arrive. When police did arrive, they entered through the open door and confronted Phillips. A brief struggle occurred as Phillips reached for his gun. After subduing Phillips and handcuffing him, the officers removed the loaded handgun from Phillips' possession.
 
 
 5
 Phillips sought to suppress the firearm, arguing that the officers violated federal "knock and announce" law. The district court rejected the argument, ruling that: (1) the open door relieved the officers from the knock and announce requirement; (2) there existed exigent circumstances that waived the requirement; and (3) the owner of the home consented to entry by requesting police assistance. Phillips then sought to establish a justification defense, contending that he possessed the firearm only as protection against the men who had earlier beaten and robbed him. The district court denied Phillips' motion, ruling that Phillips failed to make a prima facie showing sufficient to allow the defense.
 
 
 6
 Phillips pleaded guilty, reserving the right to appeal the district court's adverse rulings. Prior to sentencing, the government filed an information listing Phillips' three prior felony convictions. The government requested the court to enhance Phillips' sentence pursuant to the ACCA. The court refused, ruling that two of the listed felonies "were not committed on occasions different from one another for purposes of [the Act]."
 
 II.
 
 7
 Phillips argues that the district court should have suppressed the seizure of his firearm because the police failed to comply with the "knock and announce" requirements of 18 U.S.C. § 3109. That section requires that police officers "not open the closed door of a dwelling until they have announced their authority and purposes and have been refused admittance." United States v. Contreras-Ceballos, 999 F.2d 432, 434 (9th Cir.1993). We agree with the district court that the statute does not apply to officers who enter through open doors. See United States v. Valenzuela, 596 F.2d 1361, 1365 (9th Cir.1979) ("entry through an open door is not a 'breaking' within the meaning of the statute"); United States v. Vargas, 436 F.2d 1280, 1281 (9th Cir.1971) ("thrust of Section 3109 ... is aimed at the closed or locked door"). Moreover, the district court correctly noted that exigent circumstances and the owner's consent in this case would serve to negate any violation of the statute. See United States v. Turner, 926 F.2d 883, 886-87 (9th Cir.1991) (exigent circumstances); United States v. Valencia-Roldan, 893 F.2d 1080, 1081 n. 1 (9th Cir.1990) (owner consent). We affirm the district court's suppression ruling.
 
 III.
 
 8
 Phillips argues that the district court erred by refusing to allow him to present a justification defense. Such a defense is available in felon-in-possession cases. See United States v. Gomez, 92 F.3d 770, 774-75 (9th Cir.1996). Therefore, "if the evidence, when viewed in the light most favorable to [Phillips], was adequate to make out a justification defense, he was entitled to present it and have the jury instructed accordingly." Id. at 775.
 
 
 9
 To establish a justification defense, Phillips was required to proffer sufficient evidence to demonstrate each element of the defense, namely that: "(1) he was under unlawful and present threat of death or serious bodily injury; (2) he did not recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) he had no reasonable legal alternative; and (4) there was a direct causal relationship between the criminal action and the avoidance of the threatened harm." United States v. Wofford, 122 F.3d 787, 790 (9th Cir.) (quoting United States v. Lemon, 824 F.2d 763, 765 (9th Cir.1987)), cert. denied, --- U.S. ----, 118 S.Ct. 233, 139 L.Ed.2d 164 (1997). Phillips contends that he satisfied these elements through his testimony that he took possession of the gun only because he believed his life was in danger from the same men who had earlier assaulted and robbed him. Phillips explained that while in Cosby's house, he saw individuals outside, located a gun he knew was in the house, and armed himself against the intruders. He was unaware that Cosby had called the police.
 
 
 10
 The district court ruled that Phillips' testimony was insufficient to establish a justification defense. We agree. When police entered Cosby's house, they found Phillips sitting at a kitchen table with his back to the door, suggesting that he did not believe he was under an imminent threat of attack. Moreover, Phillips recklessly placed himself in both situations--first, by voluntarily seeking a meeting with known drug dealers to purchase illicit drugs, and second, by unlawfully entering and remaining at Cosby's home. See United States v. Perez, 86 F.3d 735, 737 (7th Cir.1996) (defense is unavailable for one whose fears rise from involvement in illegal activities). Phillips never called the police to report the assault and robbery or his suspicion that the men might still be pursuing him. Finally, it is undisputed that Phillips reached for the gun even after he was confronted by the uniformed officers; he struggled with the officers, resisted arrest, and attempted to grab the gun, knowing that his "attackers" were in fact police officers. We agree with the district court that Phillips failed to satisfy any element of the defense.
 
 IV.
 
 11
 The government cross-appeals the district court's ruling that the ACCA does not apply to Phillips. That statute provides that any individual convicted as a felon-in-possession who has three previous convictions for violent felonies or serious drug offenses "committed on occasions different from one another" shall be imprisoned for at least fifteen years without probation or parole. 18 U.S.C. § 924(e)(1). The district court ruled that the ACCA did not apply because "the two burglaries committed [by Phillips] on October 21, 1981 and October 22, 1981 were not committed on occasions different from one another for purposes of [the ACCA]."
 
 
 12
 The facts giving rise to the court's ruling were developed during a sentencing hearing. The government contended that near midnight on October 21, 1981, Phillips and his accomplice, Turner Roth, entered and burglarized the Central Valley Barbershop and Beauty Salon near Spokane. Shortly thereafter, the two entered and burglarized an adjacent business, Antique Auto. The owner of that business lived in an attached apartment and notified police of the robbery in progress. When police arrived, Phillips and Roth were found hiding in the attic of Antique Auto. Police recovered a handgun from the attic and seized a calculator from Roth and a roll of half-dollars from Phillips. Roth later admitted that the gun belonged to him; the calculator and money were identified as stolen from Central Valley.
 
 
 13
 Phillips pleaded guilty to both burglaries. On his plea statement, Phillips wrote: "I entered and stayed unlawfully in Antique Auto and Central Valley Beauty Salon." The government offered evidence to show that Phillips was convicted of two separate second-degree burglary charges. Other evidence indicated that the two businesses were located in separate structures, had different addresses, had separate access, and were owned by different individuals.
 
 
 14
 Phillips did not contest the government's evidence; his attorney nevertheless offered a counter explanation of the events of that night. According to counsel, Phillips never entered the Central Valley Barbershop and Beauty Salon. Rather, Roth burglarized Central Valley simultaneously with Phillips' entry into Antique Auto. When Roth finished the burglary at Central Valley, he joined Phillips in Antique Auto. Counsel explained that Phillips possessed the stolen money from Central Valley because Roth gave it to Phillips when the two rendezvoused. Counsel submitted that, notwithstanding Phillips' statement in his plea, Phillips never actually entered Central Valley.
 
 
 15
 The district court gave no indication that it believed or relied upon counsel's statement that Phillips never entered the first store. Rather, the court found that "two separate burglaries occurred on the same evening" and that Phillips and his cohort did "go in and burglarize one and go over to the other." The court reasoned, however, that the ACCA's requirement of "separate crimes on occasions different from one another" means something more than burglarizing adjacent buildings within moments of each other. Accordingly, the court ruled that Phillips' burglaries "were not committed on occasions different from one another." Our review is de novo. See United States v. Young, 988 F.2d 1002, 1003 (9th Cir.1993) (whether prior conviction may be used for purposes of enhancement under the ACCA is a question of law reviewed de novo); see also United States v. Hobbs, 136 F.3d 384, 387 (4th Cir.1998) (whether offenses did not occur "on occasions different from one another" is a question of law reviewed de novo), cert. denied, --- U.S. ----, 118 S.Ct. 2358, 141 L.Ed.2d 727 (1998).
 
 
 16
 We have developed a standard for determining when offenses should be considered "committed on occasions different from one another." "The rule [is that] offenses that are temporally distinct constitute separate predicate offenses, even if committed within hours of each other, similar in nature, and consolidated for trial or sentencing." United States v. Maxey, 989 F.2d 303, 306 (9th Cir.1993). We have also addressed the question of when offenses are "temporally distinct." In United States v. Antonie, 953 F.2d 496, 498 (9th Cir.1991), two of the defendant's predicate crimes were "committed on the same evening approximately forty minutes apart." Id. The district court had ruled that the predicate offenses were "too close in time" to be separately counted. Id. at 497. We reversed, noting the offenses occurred at different times, in different locations, and involved different victims. Id. at 499. Similarly, in United States v. Wicks, 833 F.2d 192, 194 (9th Cir.1987) (reviewing former version of ACCA), we held that two burglaries, committed on the same night at different locations, were "distinct in time" and therefore separate predicate offenses. We noted the important difference "between convictions for simultaneous robberies and convictions for robberies distinct in time." Wicks, 833 F.2d at 194; see also United States v. Lewis, 991 F.2d 524, 526 (9th Cir.1993) (crimes committed three days apart are separate and distinct).
 
 
 17
 Our standard is in accord with all other circuits to have considered analogous situations. For example, in United States v. Pope, 132 F.3d 684, 689 (11th Cir.1998), the court was faced with a district court's ruling that burglaries committed on the same night of two buildings approximately 200 yards apart were not crimes committed on "occasions different from one another." The Eleventh Circuit reversed, ruling that "so long as predicate crimes are successive rather than simultaneous, they constitute separate criminal episodes for purposes of the ACCA." 132 F.3d at 692. Similarly, in Hobbs, 136 F.3d at 390, the Fourth Circuit held that burglaries committed within an hour of one another constitute separate and distinct crimes and require application of the ACCA.
 
 
 18
 In a factual situation indistinguishable from the case at hand, the Tenth Circuit ruled that the act of breaking into a shopping mall and burglarizing two businesses and a post office in the same evening constitutes three separate predicate offenses for purposes of the ACCA. See United States v. Tisdale, 921 F.2d 1095, 1098 (10th Cir.1990). The court reasoned that "[a]fter the defendant 'successfully completed' burglarizing one business, he was free to leave. The fact that he chose, instead, to burglarize another business is evidence of his intent to engage in a separate criminal episode." Id. at 1099.
 
 
 19
 In United States v. Washington, 898 F.2d 439, 440 (5th Cir.1990), the court was faced with a defendant who robbed a store and then returned several hours later to rob it again. The defendant contended that the robberies were part of a "criminal spree" that should be considered as a single criminal episode. The Fifth Circuit rejected the argument, ruling that the defendant's conduct was not a criminal spree but rather constituted multiple offenses. Washington, 898 F.2d at 441. The court examined cases where each defendant engaged in a "continuous course of conduct." Id. (citing United States v. Towne, 870 F.2d 880, 889 (2d Cir.1989) (kidnapping and rape of single victim held to be single criminal episode); United States v. Petty, 828 F.2d 2, 3 (8th Cir.1987) (simultaneous robbery of six individuals held to be a single criminal episode); United States v. Montgomery, 819 F.2d 847, 850 n. 2 (8th Cir.1987) (simultaneous robbery of two individuals is a single criminal episode)). The court reasoned from these cases that when there is even the shortest time between criminal events, the crimes are no longer continuous and the offenses constitute "multiple criminal episodes." Washington, 898 F.2d at 442. The key is that after one crime is complete, the defendant has the opportunity to stop and not engage in a second criminal act. Id.
 
 
 20
 Finally, in United States v. Brady, 988 F.2d 664, 665 (6th Cir.1993) (en banc), the Sixth Circuit considered "the question of whether two armed robberies of different victims at different locations committed approximately thirty minutes apart were 'committed on occasions different from one another.' " The court recognized that "mere proximity in time between two offenses occurring at different places and involving different victims" would not merge offenses for purposes of the ACCA. Brady, 988 F.2d at 668. Rather, the court reasoned that "time alone" can be sufficient "to separate criminal episodes occurring on the same date, at the same place, and against the same victim." Id. The en banc court ruled that "[c]onsistent with the holdings of our sister circuits, we believe that offenses committed by a defendant at different times and places and against different victims, although committed within less than an hour of each other, are separate and distinct criminal episodes and that convictions for those crimes should be counted as separate predicate convictions under § 924(e)(1)." Id. at 669 (citing United States v. Schieman, 894 F.2d 909, 913 (7th Cir.1990) (defendant who burglarized shop and shortly thereafter assaulted a police officer committed two distinct criminal acts); Antonie, 953 F.2d at 499; Tisdale, 921 F.2d at 1099; Washington, 898 F.2d at 441-42; Wicks, 833 F.2d at 193). Again, the key to the court's decision was the fact that after the defendant committed the first robbery, he could have decided to stop. "Instead, he decided to rob again." Brady, 988 F.2d at 669.
 
 
 21
 Applying the reasoning of these cases, we are satisfied that Phillips' robberies of two different stores involving two different victims constitute separate criminal episodes for purposes of the ACCA. Accordingly, the district court erred when it held otherwise. This does not, however, end our inquiry. Phillips renews his contention made to the district court that he never entered the first store and thus should not be held accountable for that burglary. He relies on United States v. Murphy, 107 F.3d 1199, 1208-10 (6th Cir.1997), where the court concluded that two armed robberies did not occur on "separate occasions" for purposes of the ACCA, notwithstanding that defendant was convicted of both. In that case, "defendant and two accomplices entered the first residence and robbed the occupant. While defendant remained in the first residence to prevent the occupant from calling the police, his accomplices kicked in the door of the adjoining residence and robbed the second victim." Id. at 1208. The court rejected the government's argument that the defendant committed two distinct crimes, reasoning that he was only an aider and abettor of the second burglary. Id. at 1210. The court concluded that because the defendant "never left his original location, he never ceased his original conduct and he never successfully escaped the site of the first crime." Id. Accordingly, the court held that "the absence of a definable endpoint to the first event" distinguished the case from others where defendants committed distinct crimes. Id.
 
 
 22
 This case is unlike Murphy, however, because there is no evidence in the record to support Phillips' contention that he never entered the first store. Moreover, the evidence submitted by the government clearly contradicts Phillips' rendition of the facts. Phillips' plea admission that he entered both stores, and the fact that he was apprehended in the second with stolen goods from the first, clearly belie any contention that he did not burglarize both stores; indeed, the district court specifically found that Phillips entered both locations.
 
 
 23
 The government carried its burden of proving by a preponderance of the evidence that Phillips committed three predicate offenses "on occasions different from one another." It did so by submitting unchallenged, certified records of conviction and other clearly reliable evidence. See United States v. Newman, 912 F.2d 1119, 1122 (9th Cir.1990); United States v. Potter, 895 F.2d 1231, 1238 (9th Cir.1990). The burden then shifted to Phillips to challenge the government's evidence. See United States v. Cowart, 90 F.3d 154, 159 (6th Cir.1996) (once government has shown that defendant has prior convictions, burden shifts to defendant to demonstrate that the predicate crimes were not committed as part of a single common scheme or plan); United States v. Hudspeth, 42 F.3d 1015, 1019 n. 6 (7th Cir.1994) (certified record of conviction satisfies government's burden; defendant must then establish that prior convictions occurred on one occasion); United States v. Redding, 16 F.3d 298, 302 (8th Cir.1994) (same). Phillips failed to carry that burden.
 
 
 24
 We conclude that the district court erred by not sentencing Phillips pursuant to the ACCA. Thus, we vacate the sentence imposed and remand for resentencing. Because application of the ACCA will result in a greater term of imprisonment, it is not necessary for us to consider Phillips' remaining contention that the district court otherwise misapplied the Sentencing Guidelines. See U.S.S.G. § 4B1.4 (implementing section 924(e) to provide for statutory minimum sentence).
 
 
 25
 Conviction AFFIRMED; sentence VACATED and REMANDED.