**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Moses CORONA–SANCHEZ, aka**
**Enrique Sanchez–Corona,**
**Defendant–Appellant.**

**No. 98–50452.**

United States Court of Appeals,
Ninth Circuit.

Submitted July 15, 1999[1]

Filed Dec. 8, 2000

---

**1.** The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

Wendy S. Gerboth, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Jacqueline J. Jackson, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

Before: BRUNETTI, RYMER, and SILVERMAN, Circuit Judges.

BRUNETTI, Circuit Judge:

■ Moses Corona–Sanchez pled guilty to illegally reentering the United States after deportation in violation of 8 U.S.C. § 1326(a) and (b)(2). He received a 77–month sentence, which reflects a sixteen-level enhancement of the base offense level, based on the district court's finding that Corona–Sanchez reentered the United States after deportation and the commission of aggravated felony pursuant to 8 U.S.C. § 1326(b)(2) and United States Sentencing Guideline § 2L1.2(b)(1)(A). Corona–Sanchez challenges whether his conviction under California Penal Code §§ 488 and 666 constitutes an "aggravated felony" as that term is defined in 8 U.S.C.

§ 1101(a)(43)(G). We review de novo to determine whether the aggravated felony provision is applicable. *United States v. Ceron–Sanchez*, 222 F.3d 1169, 1172 (9th Cir.2000). We conclude that it is and affirm.

## I.

■ As an initial matter, we note that in February 1998, Corona–Sanchez pled guilty to a one-count indictment which charged him with a violation of both 8 U.S.C. 1326(a) (being an alien found in the United States after deportation) and 8 U.S.C. § 1326(b)(2) (reentry after deportation and the commission of an aggravated felony). At that time, we considered § 1326(b)(2) to be a separate offense. *See United States v. Gonzalez–Medina*, 976 F.2d 570, 572 (9th Cir.1992). Shortly after Corona–Sanchez's plea, the Supreme Court held that the fact of a prior aggravated felony conviction is not an element of the offense, but a sentencing factor to be applied by the court. *See Almendarez–Torres v. United States*, 523 U.S. 224, 226, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998).

We recently confronted this precise factual situation in *United States v. Rivera–Sanchez*, 222 F.3d 1057, 1061–62 (9th Cir. 2000). There we held that where an indictment charges a defendant with a violation of both § 1326(a) and § 1326(b)(2) in the same count, and the judgment reflects conviction under both provisions, "the proper procedure under these circumstances is to direct the district court to enter a corrected judgment striking the reference to § 1326(b)(2) so that the judgment will unambiguously reflect that the defendant was convicted of only one punishable offense pursuant to § 1326(a)." *Id.; see also United States v. Herrera–Blanco*, 232 F.3d 715 (9th Cir.2000) (*sua sponte* remanding to the district court with directions to correct the judgment of conviction to exclude a reference to 8 U.S.C. § 1326(b)(2)). We shall do so here. We are left with Corona–Sanchez's challenge to his sentence.

## II.

Corona–Sanchez is a citizen of Mexico who first came to the United States in 1988. His presentence report shows that he has been deported eighteen times since 1993. The report also lists at least ten occasions on which Corona–Sanchez was arrested for various crimes after his numerous reentries into United States. These include: showing false identification to a peace officer; being a minor in possession of alcohol; second degree commercial burglary; petit theft; possessing a dangerous weapon (brass knuckles); possession of cocaine; obstruction of justice/resisting a peace officer; petit theft with a prior; being under the influence of methamphetamine; consumption of alcohol in a public place and possession of a hypodermic needle.

In November 1997, Corona–Sanchez was deported and again returned. He was arrested for felony DUI, driving without a license, failing to drive on the right side of the road, and failure to provide financial responsibility. Corona–Sanchez was then taken into federal custody and was indicted on the present charge of being a deported alien found in the United States, in violation of 8 U.S.C. § 1326. He pled guilty in February 1998 and was sentenced on June 29, 1998.

The United States Probation Office filed a presentence report recommending that the district court increase Corona–Sanchez's offense level by 16 levels under U.S.S.G. § 2L1.2(b)(1)(A) based on Corona–Sanchez's conviction of an "aggravated felony" following deportation. Corona–Sanchez objected to the report and the enhancement. The district court found that Corona–Sanchez qualified for the 16–level enhancement and sentenced him to the lower end of the guideline range, 77 months. Corona–Sanchez appeals, claiming that the district court erred by treating his prior California conviction for "pet-

it theft with a prior" as an "aggravated felony" meriting a sentence enhancement.

## III.

An alien who unlawfully reenters or remains in the United States after deportation is subject to a substantial increase in sentence if he previously was deported after having been convicted of an "aggravated felony." *See* U.S.S.G. § 2L1.2(b)(1)(A). Section 2L1.2 relies on 8 U.S.C. § 1101(a)(43) for its definition of "aggravated felony." An "aggravated felony" under § 1101(a)(43)(G) includes "a theft offense (including receipt of stolen property) . . . for which the term of imprisonment [is] at least one year."[2] The Government concedes that the "theft offense" at issue (petit theft with a prior), which was treated as an "aggravated felony" under Section 1101(a)(43) to support a sentencing enhancement under U.S.S.G. § 2L1.2, involves a California conviction arising from Corona–Sanchez's attempt to steal a twelve pack of beer and a pack of cigarettes from a grocery store. While this crime constitutes a petit theft under Cal.Penal Code § 488, Corona–Sanchez was sentenced under Cal.Penal Code § 666 for "petit theft with a prior conviction."

Section § 666 is a sentencing enhancement provision, entitled "Petit theft; prior conviction of certain offenses; punishment." It provides that

> [e]very person who, having been convicted of petit theft, . . . and having served a term therefor in any penal institution or having been imprisoned therein as a condition of probation for that offense, is subsequently convicted of petit theft, then the person convicted of that subsequent offense is punishable by imprisonment in the county jail not exceeding one year, or in state prison.

*Id.* Since Corona–Sanchez served 30 days in jail for a prior petit theft, he qualified for a § 666 enhancement to "petit theft

with a prior" based on his subsequent petit theft, involving the beer and cigarettes.

We must decide whether Corona–Sanchez's conviction under California Penal Code §§ 488 and 666 for "petit theft with a prior" qualifies as an aggravated felony, requiring a sixteen-level increase in sentence under U.S.S.G. § 2L1.2(b)(1)(A). We hold that it does.

## IV.

In order to determine whether Corona–Sanchez's conviction for "petit theft with a prior" is an aggravated felony, we must decide what Congress meant by the term "theft offense" in Section 1101(a)(43)(G). Like many other terms in the same statute, Congress did not define the terms "theft," "offense," or "theft offense." Nor did Congress cross-reference "theft offense" with any other federal or state statute.

We have had occasion to interpret undefined terms in 8 U.S.C. § 1101(a)(43). For example, in *United States v. Baron–Medina*, 187 F.3d 1144, 1146 (9th Cir.1999), we were tasked with defining the offense of "sexual abuse of a minor," which constitutes an "aggravated felony" under § 1101(a)(43)(A). There, we employed the ordinary, contemporary, and common meaning of the words that Congress used to interpret the term. *Id.* We used the dictionary definition of "abuse" and the common, everyday meanings of "sexual" and "minor" to conclude that a conviction under California Penal Code Section 288(a) (lewd or lascivious act on a minor) constitutes a conviction for "sexual abuse of a minor" within the meaning of 8 U.S.C. § 1101(a)(43). *Id.* at 1147.

In *Ye v. Immigration and Naturalization Service*, 214 F.3d 1128 (9th Cir.2000), we considered whether the defendant's conviction for "vehicle burglary" under California Penal Code § 459 qualified as a

---

**2.** Although the statute omits the operative verb, its footnote suggests that the word "is" should precede "at least one year." *See* 8 U.S.C. § 1101(a)(43)(G) n. 2; *see also Alberto–Gonzalez v. Immigration and Naturalization Service*, 215 F.3d 906, 909–10 (9th Cir.2000).

"burglary offense," and thus, an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(G). *Id.* at 1131. Congress did not define the terms "burglary" or "burglary offense" under Section 1101(a)(43). However, we recognized that the Supreme Court had previously addressed the meaning of the term "burglary" contained in another statute in *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990).

In *Taylor*, the Supreme Court examined whether a defendant's state conviction for "burglary" qualified him for a sentence enhancement under 8 U.S.C. § 924(e) of the Career Criminals Amendment Act of 1986. A person convicted under the Act is subject to an enhancement in sentence if he also has three prior convictions for specified offenses, including burglary. *See* § 924(e)(1). The defendant contended that his Missouri conviction for second-degree burglary did not qualify as a "burglary" under the Act.

The Eighth Circuit disagreed, holding that "burglary" in § 924(e) means "burglary" however a state chooses to define it. *Taylor*, 495 U.S. at 579, 110 S.Ct. 2143. On review, the Supreme Court recognized the nationwide sentencing inequities which could result from allowing such a course, and held that the word burglary "must have some uniform definition independent of the labels employed by the various States' criminal codes." *Id.* at 592, 110 S.Ct. 2143. The Court then crafted a uniform, generic definition of burglary, including each of the base elements. Thus, after *Taylor*, a defendant's conviction for "burglary" under 8 U.S.C. § 924(e) does not qualify him for a sentence enhancement unless his offense meets the uniform definition adopted therein.

*Taylor* was decided before Congress added the term "burglary offense" to the definition of aggravated felony in 1994. *Ye,* 214 F.3d. at 1132. In the absence of legislative history to the contrary, we assumed in *Ye* that Congress intended the word "burglary" in Section 1101(a)(43)(G) to be interpreted consistently with the Supreme Court's uniform definition of that term in *Taylor*. Applying that definition, we concluded that Ye's conviction for vehicle burglary did not correspond. Accordingly, Ye's prior conviction did not qualify as an aggravated felony. *Id.* at 1133.[3]

*Baron–Medina* and *Ye* take two different approaches to testing a prior conviction for aggravated felony status. *Baron–Medina* considered the ordinary meaning of the words "sexual abuse of a minor" and tested whether the conduct reached by the specific state statute at issue fell within the common, everyday meanings of those words. *Id.* at 1147. *Ye,* on the other hand, followed *Taylor*'s approach by adopting a "uniform definition independent of the labels used by state codes" for burglary, identical to the one in *Taylor*. In other words, *Baron–Medina* did not set forth the elements or a "uniform definition" of "sexual abuse of a minor."

This case is more like *Ye* (construing "burglary") than *Baron–Medina* (construing "sexual abuse of a minor") since "theft" is a more traditional crime containing distinct elements. However, the comprehensive crime of "theft" differs from "burglary" because modern theft statutes encompass a broader range of conduct. Because burglary is a discrete offense, it lends itself to a narrow definition that may be "applied uniformly across the county, without regard to nuances of state law." *Id.* (citing *Kahn v. INS*, 36 F.3d 1412, 1414 (9th Cir.1994)). "Theft," on the other hand, arises from an amalgam of common law crimes and has undergone many multijurisdictional transmutations. As a result,

---

**3.** In *Ye,* we did not comment on the effect of Congress's use of the word "offense" in conjunction with the term "burglary" in 8 U.S.C. § 1101(a)(43)(G). Nor did the Fifth and Seventh Circuits, which we joined in adopting the Supreme Court's definition of "burglary" in *Taylor* for purposes of Section 1101(a)(43)(G). *See Lopez–Elias v. Reno,* 209 F.3d 788, 791–92 (5th Cir.2000); *Solorzano–Patlan v. INS,* 207 F.3d 869, 874–75 (7th Cir.2000).

it is considerably more difficult to define the contours of a "theft offense."

■ The contemporary crime of "theft" stems from the common law crime of larceny. *See* Wayne R. LaFave, Criminal Law § 8.1 (3d ed.2000). At common law, a person committed larceny "when one person misappropriated another's property by means of taking it from his possession without his consent." *Id.* § 8.1(a). The elements of common law larceny include a(1) trespassory (2) taking and (3) carrying away of the (4) personal property (5) of another (6) with intent to steal it. *Id.* § 8.2. Historically, larceny was separate and distinct from the common law crimes of embezzlement and false pretenses. *Id.* § 8.1(b). Most modern codes have abolished the separate crimes of larceny, embezzlement, and false pretenses in favor of the comprehensive crime of "theft." *Id.* §§ 8.2 n. 1, 8.8.

We shall follow *Taylor*'s approach in crafting a definition of "theft offense." There, the Supreme Court traced the statutory development of "burglary" and finally rested on a modern, generic definition "now used in the criminal codes in most States." *Id.* at 598, 110 S.Ct. 2143. In so doing, the Court rejected the argument that "burglary" in § 924(e) should be accorded its common-law meaning. *Id.* The Court was concerned that employing such a definition would not comport with the purposes of the enhancement statute because "[t]he arcane distinctions embedded in the common-law definition have little relevance to modern law enforcement concerns." *Id.*

Here, the same concerns are present. When Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208 ("IIRIRA"), it greatly expanded the immigration consequences of past criminal conduct. Besides adding new crimes under the definition of "aggravated felony" in 8 U.S.C. § 1101(a)(43), it "dramatically broadened the definition's reach by expanding the terms of many offenses already denominated aggravated felonies." *Maria v. McElroy,* 68 F.Supp.2d 206, 210 (E.D.N.Y.1999). The provision of the statute at issue provides one such example. With regard to a theft or burglary offense, Congress decreased the length of the sentence required to have been imposed for the predicate offense from five years to one year. *See* IIRIRA § 321(a)(3). The effect of this change is certainly far-reaching. In short, it is clear from recent expansive legislation in this area that Congress intended to sweep a broad range of offenses under the rubric of "aggravated felony."

In addition, Congress chose to use the term "theft offense" in § 1101(a)(43)(G), as opposed to mere "theft." It also expressly included the "receipt of stolen property" under the definition of "theft offense." This lends additional weight to our conclusion that Congress intended to paint "theft offense" with a broad brush. In this vein, we agree with the analysis set forth in *United States v. Esparza–Ponce,* 7 F.Supp.2d 1084, 1092 (S.D.Cal.1998), which concludes that the term "theft offense" under 8 U.S.C. § 1101(a)(43)(G) has a broader meaning than the term "theft":

> Notably, Congress did not define an aggravated felony as a "theft"-which would have been simple. Rather, Congress added the word "offense." If the term "theft" is coterminous with the phrase "theft offense," then the word "offense" is superfluous. Yet, "[a] statute should be construed so as to avoid making any word superfluous."
>
> The questions becomes, then, what the word "offense" adds to the term "theft." It certainly does not restrict or clarify the concept of theft, because all thefts are offenses. If the word "offense" does not restrict or clarify the word "theft," then it must broaden it. Thus, one most reasonably could read the statute as describing "an offense in the nature of a theft."

*Id.* at 1091–92 (citations omitted).

■ We think the definition of "theft offense" should derive from the Model Pe-

nal Code, variations of which many states have adopted. The Code reflects a common understanding of the crime of "theft," and, we think, defines theft in a way that captures the sentiment of Congress because it employs an expansive definition. The Code sets forth eight types of theft offenses: 1) theft by unlawful taking or disposition; 2) theft by deception; 3) theft by extortion; 4) theft of property lost, mislaid, or delivered by mistake; 5) receiving stolen property; 6) theft of services; 7) theft by failure to make required disposition of funds received; and 8) unauthorized use of automobiles and other vehicles. Model Penal Code §§ 223.2–223.9. Like in most jurisdictions, the Code consolidates the three common law crimes of larceny, embezzlement, and false pretenses into "theft." Because the Code's definitions of theft and theft-related offenses are all-encompassing, we expect that they will capture most "theft-related" crimes in most jurisdictions, which allays any concern about uniformity in our federal immigration laws.[4]

### V.

■ We now turn to Corona–Sanchez's predicate conviction to determine whether it constitutes an aggravated felony. Corona–Sanchez was convicted of "petit theft" under California law. California Penal Code § 486 divides "theft" into two categories, "grand" and "petit." Section § 487 defines "grand" theft as involving the theft of money, labor, or real or personal property with a value exceeding $400. Section 488 states that "[t]heft in all other cases is petit theft." Whether labeled "petit" or "grand," both offenses rely on California Penal Code Section 484(a), which defines "theft" as follows:

> Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which

has been entrusted to him, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real property, or who causes or procures others to report false of his wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtained for the labor or service of another, is guilty of theft.

*Id.*

■ California's definition of theft substantially corresponds to the theft-related offenses set forth in the Model Penal Code, including theft by unlawful taking or disposition (§ 223.2), theft by deception (§ 223.3), and theft of services (§ 223.7). Since the full range of conduct proscribed by California Penal Code § 484(a) falls within the definition of "theft offense" as set forth in this opinion, we conclude that a conviction arising from Section 484(a) (including sections 487 and 488) qualifies as a "theft offense" under 8 U.S.C. § 1101(a)(43). Finally, because Corona–Sanchez received a two year sentence under California Penal Code § 666, his prior conviction qualifies as an "aggravated felony." *See Alberto–Gonzalez v. INS*, 215 F.3d 906, 908 (9th Cir.2000) (concluding that the phrase "for which the term of imprisonment [is] at least one year" in section 1101(a)(43)(G) refers to the actual sentence imposed for the predicate conviction). Accordingly, the sentence is affirmed. We remand for the limited purpose of directing the district court to amend the judgment to reflect a conviction under 8 U.S.C. 1326(a) only.

AFFIRMED in part; REMANDED in part.

---

4. One other circuit has addressed the meaning of the term "theft offense" under Section 1101(a)(43)(G). *See United States v. Dabeit*, 231 F.3d 979, 983 (5th Cir.2000). There, the Fifth Circuit adopted the Black's Law Dictionary definition of "theft" which is "the act of stealing." *Id.* The Model Penal Code's definition is not contrary.