## UNITED STATES of America, Plaintiff–Appellant,

v.

## Miguel TRINIDAD–AQUINO, Defendant–Appellee.

### No. 00–10013.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 13, 2000

Submission Vacated May 8, 2001

Resubmitted June 8, 2001

Filed Aug. 8, 2001

Michael A. Rotker (argued), Assistant United States Attorney, San Francisco, California, and Lisa Simotas, Criminal Di-

**1142**

vision, U.S. Department of Justice, Washington, D.C., for the plaintiff-appellant.

Steven Kalar (argued), Assistant Public Defender, San Francisco, California, for the defendant-appellee.

Before: KOZINSKI, HAWKINS, and BERZON, Circuit Judges.

Opinion by Judge MICHAEL DALY HAWKINS; Dissent by Judge KOZINSKI

MICHAEL DALY HAWKINS, Circuit Judge:

The government appeals Miguel Trinidad–Aquino's sentence for illegally re-entering the United States following deportation, a violation of 8 U.S.C. § 1326. We are asked to decide whether Trinidad–Aquino should have received a sixteen-level increase in base offense level under Sentencing Guidelines § 2L1.2(b)(1)(A) because he was previously deported after conviction for an "aggravated felony." The answer turns on a question of law: does a California conviction for driving under the influence of alcohol with injury to another constitute a "crime of violence" as defined at 18 U.S.C. § 16?

## FACTS AND PROCEDURAL HISTORY

In October 1999, Trinidad–Aquino pled guilty to illegally re-entering the United States following deportation in violation of 8 U.S.C. § 1326. His plea was made without a government plea agreement.

Sentencing for violation of § 1326 is controlled by Sentencing Guidelines § 2L1.2, which provides a sixteen-level increase in base offense level if the defendant was previously deported after conviction for an "aggravated felony." The government argued to the district court at sentencing that Trinidad–Aquino met this standard and should receive the increase.

The government's argument was based on Trinidad–Aquino's June 1994 conviction in California state court for driving under the influence of alcohol with bodily injury ("DUI"), a violation of California Vehicle Code § 23153, and hit and run resulting in death or injury, a violation of California Vehicle Code § 20001. Because the government did not pursue its argument under the hit and run statute on appeal, our review is limited to the DUI conviction.

The district court agreed with Trinidad–Aquino that since either of these felonies requires merely a negligence mens rea, neither qualifies as an "aggravated felony." The court sentenced Trinidad–Aquino to the maximum term available at the unadjusted base sentencing level, twenty-one months, and the government took this appeal.

## STANDARD OF REVIEW

██ The district court's interpretation of the Sentencing Guidelines is reviewed de novo. *United States v. Kakatin*, 214 F.3d 1049, 1051 (9th Cir.2000). A trial court's decision that a prior conviction may not be used for purposes of sentencing enhancement is reviewed de novo. *See United States v. Phillips*, 149 F.3d 1026, 1031 (9th Cir.1998).

## ANALYSIS

**I. Federal Statutory Framework**

Sentencing Guidelines § 2L1.2(b)(1)(A) requires a sixteen-level increase in offense level if the defendant was previously deported after conviction for an "aggravated felony." According to the application notes, "aggravated felony" is defined at 8 U.S.C. § 1101(a)(43).

Section 1101(a)(43) contains a list of many crimes which constitute "aggravated felonies," only one of which is at issue here. This case centers around § 1101(a)(43)(F), which defines an "aggravated felony" as "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year." The general issue in this case is whether Trinidad–Aquino's DUI conviction meets the definition of "crime of violence" found at 18 U.S.C. § 16.

## II. Nature of our Review

■ We held in *United States v. Lomas*, 30 F.3d 1191, 1193 (9th Cir.1994), that to determine whether a state crime is an "aggravated felony," we look at the statutory definition of the crime. *See also United States v. Sandoval–Barajas*, 206 F.3d 853, 855–56 (9th Cir.2000). Since Trinidad–Aquino did not go to trial on his state charges and his state plea colloquy was not made part of the record, "the issue is not whether [the] actual conduct constituted an aggravated felony, but whether the full range of conduct encompassed by [the state statute] constitutes an aggravated felony." *Sandoval–Barajas*, 206 F.3d at 856. Thus, if there is any way that Trinidad–Aquino could have violated California Vehicle Code § 23153 without committing an "aggravated felony" (here a "crime of violence"), the district court was correct in not applying the sixteen-level sentencing enhancement.

## III. Trinidad–Aquino's State Conviction

California Vehicle Code § 23153 reads, in pertinent part:

(a) It is unlawful for any person, while under the influence of any alcoholic beverage and [or] drug, to drive a vehicle and concurrently do any act forbidden by law, or neglect any duty imposed by law in driving the vehicle, which act or neglect proximately causes bodily injury to any person other than the driver.

The statute plainly provides, and the government does not dispute, that violation can occur through negligent acts, so long as the driver is legally intoxicated when those negligent acts are committed. The precise issue before us then is whether negligent conduct satisfies the 18 U.S.C. § 16 definition of "crime of violence."

## IV. Federal Statutory Analysis

### A. Construing "Aggravated Felonies" Generally

We have construed the meaning of several of the "aggravated felonies" listed at 8 U.S.C. § 1101(a)(43). The case law shows that we have developed two alternative methodologies for defining these "aggravated felonies."

First, in *United States v. Baron–Medina*, 187 F.3d 1144, 1146 (9th Cir.1999), we employed the ordinary, contemporary, and common meaning of "sexual abuse of a minor" to define that term, listed as an "aggravated felony" at § 1101(a)(43)(A). We coupled the dictionary definition of "abuse" with the common understanding of "sexual" and "minor" to conclude that a conviction under California Penal Code § 288(a) (lewd or lascivious act on a minor) constituted such a conviction. *Id.*

Second, in *Ye v. INS*, 214 F.3d 1128, 1131 (9th Cir.2000), we construed "burglary offense," listed as an "aggravated felony" at § 1101(a)(43)(G). Rather than use the ordinary, contemporary, and common meaning of the term, we looked to a Supreme Court case, *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), which crafted a detailed, uniform definition of "burglary." *Id.* We adopted this definition, using it to define "burglary offenses." *Id.*

Recently in *United States v. Corona–Sanchez*, 234 F.3d 449 (9th Cir.2000), we considered the meaning of "theft offense," which is defined as an "aggravated felony" at § 1101(a)(43)(G). We noted the divergent methodologies developed in *Baron–Medina* and *Ye* and explained when each should be applied. *Id.* at 451–53. We summarized the cases thus:

> *Baron–Medina* and *Ye* take two different approaches to testing a prior conviction for aggravated felony status. *Baron–Medina* considered the ordinary meaning of the words "sexual abuse of a minor" and tested whether the conduct reached by the specific state statute at issue fell within the common, everyday meaning of those words. *Ye*, on the other hand, followed *Taylor*'s approach by adopting a "uniform definition independent of the labels used by state codes" for burglary, identical to the one in *Taylor*. In other words, *Baron–Medina* did not set forth the elements or a "uniform definition" of "sexual abuse of a minor."

*Id.* at 451 (internal citations omitted). We held that the issue presented in *Corona–Sanchez* was more like *Ye* and followed the categorical approach in adopting the Model Penal Code definition of "theft" to define "theft offense." *Id.* at 451–53. In so deciding, we stressed that, like burglary, theft "is a more traditional crime containing distinct elements." *Id.* at 453.

■ This case is more like *Baron–Medina* than *Ye*. "Crime of violence" is not a traditional common law crime. Like "sexual abuse of a minor," it can only be construed by considering the ordinary, contemporary, and common meaning of the language Congress used in defining the crime.[1]

### B. Construing "Crime of Violence"

We construed 18 U.S.C. § 16 in *United States v. Ceron–Sanchez*, 222 F.3d 1169 (9th Cir.2000), where we held that an Arizona conviction for aggravated assault qualified as a "crime of violence." In so holding, we stressed that "the force necessary to constitute a crime of violence [ ] must actually be violent in nature." *Id.* at 1172. We rejected an argument by the appellant that since one could be convicted of aggravated assault in Arizona with a recklessness mens rea, the crime was not a "crime of violence," holding that reckless conduct satisfies the § 16 definitions. *Id.* at 1173. The government urges us to extend this holding to cover negligent conduct as well. Because we believe that the definition of "crime of violence" found at § 16 contains a volitional requirement absent from negligence, the government's argument must be rejected.

18 U.S.C. § 16 defines "crime of violence" as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may

---

1. Of course, in construing a federal statute such as § 1101(a)(43), any definition of the terms must be "uniform" in the sense that the same, federally-prescribed definition always applies, not a definition derived from state law. The distinction we drew in *Corona–Sanchez* between two ways of determining the meaning of the terms used in § 1101(a)(43) was not meant to suggest otherwise, but only to recognize that some of the terms included in that statute have sufficient history in legal discourse that the federal definition can include the elements of qualifying state crimes, while in other instances, such as that in *Baron–Medina* and here, the federal definition must be at a more general, descriptive level, permitting substantial variance among the state laws coming within that definition.

be used in the course of committing the offense.

As explained above, *Baron–Medina* and *Corona–Sanchez* teach that because "crime of violence" is not a traditional common law crime, we look to the ordinary, contemporary, and common meaning of the language in this definition.

Both of § 16's definitions involve the "use" of physical force. Section 16(a) requires actual, attempted, or threatened use of physical force against a person or property. Section 16(b) requires a substantial risk that force may be used against a person or property in committing the offense. In ordinary, contemporary, and common parlance, the "use" of something requires a volitional act. Black's Law Dictionary (6th ed.1990) defines "use" thus: "To make use of, to convert to one's service; to employ; to avail oneself of; to utilize; to carry out a purpose or action by means of; to put into action or service, especially to attain an end." *Id.* at 1541. All of these alternative definitions—converting, employing, availing oneself of, carrying out a purpose or action, and putting into action or service to attain an end—contain a volitional requirement.[2] Under ordinary, contemporary, and common understanding, one cannot do any of these things negligently; that is, without some volition to perform the act.

Of particular note, 18 U.S.C. § 16 defines a crime of violence as one in which physical force is not only "use[d]" (or threatened to be used, or at risk of being used), but in which the physical force is "use[d] ... *against* the person or property of another." (Emphasis added). That means that there must be a volitional fea-

ture with regard to the impact or collision, and not simply with regard to the use of the physical force itself. While it might make sense—we reserve judgment on this question—to say that a person driving a car is volitionally using physical force just by doing so, it does not make sense to say that person is volitionally using physical force *against* someone or something when he neither intended to hit the person or thing nor consciously disregarded the risk that he might do so.

■ Thus, we hold that the presence of the volitional "use ... against" requirement in both prongs of 18 U.S.C. § 16 means that a defendant cannot commit a "crime of violence" if he negligently—rather than intentionally or recklessly—hits someone or something with a physical object.

This definition of "use" is not in conflict with our holding in *Ceron–Sanchez* that recklessness satisfies § 16. In defining "recklessness," we have turned to the Model Penal Code, "which the Supreme Court has relied upon as a 'source of guidance ... to illuminate' the meaning of and distinctions between intent requirements." *United States v. Gracidas*, 231 F.3d 1188, 1196 (9th Cir.2000) (en banc) (quoting *United States v. United States Gypsum Co.*, 438 U.S. 422, 444, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978)).

The Model Penal Code defines "recklessness" thus:

A person acts recklessly with respect to a material element of an offense when he *consciously disregards* a substantial and unjustifiable risk that the material element exists or will result from his

**2.** This understanding of "use" is also found in non-legal sources. *See, e.g.,* THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (3d ed. 1992) ("To put into service or apply for a purpose, employ." "To avail oneself of; practice." "To seek or achieve an end by means of; exploit."), *id.* at 1966; WEBSTER'S THIRD NEW INT'L DICTIONARY (1986) ("to put into action or service" "employ" "to carry out a purpose or action by means of"), *id.* at 2523–24.

conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.

§ 2.02(2)(c) (1985) (emphasis added). "The Supreme Court has, moreover, explained that the criminal law generally permits a finding of recklessness only when persons disregard a risk of harm of which they are aware." *United States v. Albers*, 226 F.3d 989, 995 (9th Cir.2000) (citing *Farmer v. Brennan*, 511 U.S. 825, 836–37, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

Thus, recklessness requires conscious disregard of a risk of a harm that the defendant is aware of—a volitional requirement absent in negligence. A volitional definition of "use ... against" encompasses conscious disregard of a potential physical impact on someone or something—it does not encompass nonvolitional negligence as to that impact.

Nor does our holding conflict with the recent decision in *Park v. INS*, 252 F.3d 1018 (9th Cir.2001). *Park* acknowledged, as do we, that recklessness is a sufficient mens rea for a "crime of violence." 252 F.3d at 1024. *Park*'s assertion that "an *intentional* use of physical force is not required," 252 F.3d at 1025 fn. 9 (emphasis in original), is perfectly compatible with our analysis—the "crime of violence" definitions do not require an intentional use of force, but they do require a volitional act. To use the language of mens rea, the crime need not be committed purposefully or knowingly, but it must be committed at least recklessly.

Our holding is also consistent with the holdings of all other circuits who have substantively considered the issue of an intent requirement. *See United States v.*

*Chapa–Garza*, 243 F.3d 921, 925–27 (5th Cir.2001) ("[A] crime of violence as defined in 16(b) requires recklessness as regards the substantial likelihood that the offender will intentionally employ force against the person or property of another in order to effectuate the commission of the offense."); *United States v. Rutherford*, 54 F.3d 370, 371–74 (7th Cir.1995) ("use of force" under U.S.S.G. § 4B1.2(1)(i), with language identical to § 16(a), requires an intentional act); *United States v. Parson*, 955 F.2d 858, 866 (3d Cir.1992) ("Use of physical force is an intentional act, and therefore [§ 16(a) ] requires specific intent to use force."). While we do not go as far as *Rutherford* and *Parson* in requiring specific intent, but rather merely a volitional act equivalent to recklessness, our analyses share the conclusion that, at a minimum, a volitional act is required.

We also acknowledge that two circuits have held that crimes committed with a negligence mens rea can be "crimes of violence" under § 16. *Tapia Garcia v. INS*, 237 F.3d 1216 (10th Cir.2001); *Le v. United States Attorney General*, 196 F.3d 1352 (11th Cir.1999). However, neither of these opinions contains any analysis of whether the "use ... against" language requires a volitional act. Every circuit that has engaged in such an analysis has concluded, as we do, that it does.

## CONCLUSION

Because California Vehicle Code § 23153 can be violated through negligence alone, a violation of that section is not a "crime of violence" as that term is defined at 18 U.S.C. § 16. Therefore, Trinidad–Aquino was not previously convicted of an "aggravated felony" as defined at 8 U.S.C. § 1101(a)(43), and the district court properly declined to apply the sixteen-level enhancement provided for at Sentencing Guidelines § 2L1.2(b)(1)(A).

Because the sentencing enhancement does not apply to Trinidad–Aquino, this case presents no issue under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

AFFIRMED.

KOZINSKI, Circuit Judge, dissenting:

Defendant was convicted of drunk driving resulting in bodily injury, in violation of California Vehicle Code § 23153. The question we must answer is whether—taking a categorical approach—this is an aggravated felony under 18 U.S.C. § 16. My colleagues treat the California statute as if it punished merely negligent conduct; they say: "The statute plainly provides, and the government does not dispute, that violation can occur through negligent acts, so long as the driver is legally intoxicated when those negligent acts are committed." Maj. Op. at 10337. The majority spends the rest of its opinion nit-picking the words of section 16 in a futile effort to distinguish our prior opinions in *United States v. Ceron–Sanchez*, 222 F.3d 1169 (9th Cir.2000), and *Park v. INS*, 252 F.3d 1018 (9th Cir. 2001). While I disagree that *Ceron–Sanchez* and especially *Park* can be distinguished,\* I get off the bus at an earlier station: The majority's analysis overlooks its own limitation—"so long as the driver is legally intoxicated when those negligent acts are committed." Maj. Op. at 10337.

Trinidad–Aquino was not convicted under a draconian state statute that turns mere negligent driving into a felony. In order to obtain a conviction, the state must prove three things: (1) defendant was driving a motor vehicle while intoxicated; (2) he committed a negligent act; and (3) someone was killed or injured as a result. Cal. Veh.Code § 23153. Compare this to the definition of "aggravated felony" in section 16(b): a felony that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Does a crime that meets the three criteria above satisfy this definition? Of course it does. Driving a vehicle while intoxicated and then killing or injuring somebody is the classic example of an offense that "by its nature, involves a substantial risk" that physical force will be used against another. Intoxication vastly increases the likelihood that the driver will commit a negligent act resulting in injury or death.

As the Seventh Circuit explained in *United States v. Rutherford*, 54 F.3d 370, 376 (7th Cir.1995):

> The dangers of drunk driving are well-known and well documented. Unlike other acts that may present some risk of physical injury, such as pickpocketing (*cf.* [*United States v.*] *Lee*, [22 F.3d 736 (7th Cir.1994)]) or perhaps child neglect or certain environmental crimes like the mishandling of hazardous wastes or pollutants, the risk of injury from drunk driving is neither conjectural nor speculative. Driving under the influence vastly increases the probability that the driver will injure someone in an accident. Out of the more than 34,000

---

\* *Park* held that "criminal negligence," when used in California's manslaughter statute, was a sufficient state of mind to satisfy the requirement of section 16. 252 F.3d at 1021–22, 1024–25. The statute here does not use the term "criminal negligence," but it *is* a criminal statute defining a felony. It strikes me as a strained reading of California law to construe one of its criminal statutes as calling for a mental state less stringent than criminal negligence. Is the majority saying that someone could be convicted of a felony under section 23153 based on civil negligence? I am aware of no California case that holds this, and would be surprised to find one. My guess is, California judges reading our opinion today will chortle.

fatal traffic accidents in 1992, 36.1 percent involved a driver with a blood alcohol concentration (BAC) of over .10 percent, and another 9 percent involved a driver with a BAC of between .01 and .09 percent. Statistical Abstract of the United States, 114th ed., Table 1016, p. 633 (1994). Drunk driving, by its nature, presents a serious risk of physical injury.... Drunk driving is a reckless act that often results in injury, and the risks of driving while intoxicated are well-known.

*Id.* (footnote omitted).

The majority recognizes, as it must, that recklessly disregarding a known risk is a sufficient mental state to form the basis of an aggravated felony under 18 U.S.C. § 16. Maj. Op. at 10340. It goes astray by focusing only on the negligent conduct that causes the accident, while ignoring the reckless conduct—drinking and driving—which causes the negligence and turns a civil tort into a criminal offense under California law. When a legally-intoxicated driver causes an accident which injures or kills somebody, he has acted in a criminally negligent or reckless manner. Under *Ceron–Sanchez* and *Park,* this is an aggravated felony. Because the majority's contrary conclusion is contrary to the law of the circuit and common sense, I dissent.

