# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3477

_____

United States of America,       *
                                *
      Plaintiff - Appellee,      *
                                *   Appeal from the United States
v.                              *   District Court for the
                                *   District of Nebraska.
Jose Mendez-Morales,            *
                                *
      Defendant - Appellant.      *

_____

Submitted: May 13, 2004
Filed: October 6, 2004

_____

Before LOKEN, Chief Judge, SMITH, Circuit Judge, and DORR,[*] District Judge.

_____

LOKEN, Chief Judge.

In 1992, a state court jury convicted Jose Mendez-Morales of first degree sexual assault of a minor. At subsequent deportation proceedings, Mendez-Morales conceded deportability and sought adjustment of status and a waiver of inadmissibility. See 8 U.S.C. §§ 1182(h), 1255(a) (1994). The immigration judge ruled that Mendez-Morales was eligible for this relief but the equities did not merit a favorable exercise of the agency's discretion. The Board of Immigration Appeals dismissed an administrative appeal, and Mendez-Morales petitioned this court for

_____

[*]The HONORABLE RICHARD E. DORR, United States District Judge for the Western District of Missouri, sitting by designation.

judicial review. We dismissed the appeal because his offense was an "aggravated felony" for purposes of 8 U.S.C. § 1101(a)(43) and 8 U.S.C. § 1251(a)(2)(A)(iii), and therefore 8 U.S.C. § 1105a deprived us of jurisdiction. Mendez-Morales v. INS, 119 F.3d 738, 739 (8th Cir. 1997). Mendez-Morales did not seek certiorari review of our decision nor petition the appropriate district court for habeas corpus relief.

After his removal to Mexico, Mendez-Morales returned to this country without permission and was charged with illegal reentry following deportation in violation of 8 U.S.C. § 1326(a) and (b)(2). He moved to dismiss the indictment. Relying on United States v. Mendoza-Lopez, 481 U.S. 828 (1987), and the statute that essentially codified that decision, 8 U.S.C. § 1326(d), Mendez-Morales argued that the government could not base a § 1326 conviction on the administrative deportation order because our court refused to review the merits of that order. The district court[1] denied the motion, concluding that no procedural defect in the administrative proceedings deprived Mendez-Morales of judicial review, our dismissal of the prior appeal was not part of "the deportation proceedings," and entry of the deportation order was not "fundamentally unfair" as Mendez-Morales failed to establish the requisite prejudice. A jury then convicted Mendez-Morales of illegal reentry, and the court sentenced him to 57 months in prison. He appeals, renewing his attack on the government's use of the underlying deportation order. We affirm.

In an illegal reentry prosecution, the government must prove that the alien was removed or departed the United States "while an order of exclusion, deportation, or removal is outstanding." 8 U.S.C. § 1326(a)(1). A deportation order is the product of a civil administrative proceeding. In Mendoza-Lopez, this court affirmed the dismissal of a § 1326 indictment because the defendants "were not accorded due process at the deportation hearing." 781 F.2d 111, 113 (8th Cir. 1985). A sharply

---

[1]The HONORABLE WARREN K. URBOM, United States District Judge for the District of Nebraska.

divided Supreme Court affirmed on a somewhat different ground. Noting that § 1326 does not require proof that a deportation order was lawfully entered, the Court nonetheless held that the government may not rely on the order to support a § 1326 conviction if "fundamental procedural defects of the deportation hearing" deprived the aliens of "their rights to appeal." Mendoza-Lopez, 481 U.S. at 841-42. The Court declined "to enumerate which procedural errors are so fundamental that they may functionally deprive the alien of judicial review." Id. at 839 n.17. Following this decision, Congress amended the statute to define when a prior deportation order may be collaterally attacked in a § 1326 prosecution:

**(d) Limitation on collateral attack on underlying deportation order**

In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order . . . unless the alien demonstrates that —

(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3) the entry of the order was fundamentally unfair.

Consistent with the limitations in § 1326(d), we construe Mendoza-Lopez as barring use of a prior deportation order in a § 1326 prosecution when "(1) an error in the deportation proceedings rendered the proceedings fundamentally unfair in violation of due process, *and* (2) the error functionally deprived the alien of the right to judicial review." United States v. Torres-Sanchez, 68 F.3d 227, 230 (8th Cir. 1995).

1. On appeal, Mendez-Morales first raises a contention not clearly presented to the district court. Recognizing that <u>Mendoza-Lopez</u> is "not exactly on point" because in this case the statute, not a defect in the administrative proceedings, deprived him of judicial review of the deportation order, Mendez-Morales argues that the absence of judicial review precludes the government from relying on the deportation order in this prosecution, *regardless of prejudice*. The argument is based upon a literal reading of broad dicta that preceded the majority's analysis in <u>Mendoza-Lopez</u>:

> Our cases establish that where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding. See Estep v. United States, 327 U.S. 114, 121-22 (1946); Yakus v. United States, 321 U.S. 414, 444 (1944); cf. McKart v. United States, 395 U.S. 185, 196-97 (1969).

481 U.S. at 837-38. However, the cases cited in this passage do not support Mendez-Morales's argument. In <u>Estep</u>, though the statute provided that draft board orders "are final even though they may be erroneous," the Court held that an order could be collaterally attacked *if* the board acted beyond its jurisdiction. 327 U.S. at 122-23. Here, on the other hand, the BIA clearly acted within its authority in denying Mendez-Morales discretionary relief from deportation. <u>Yakus</u> cuts against Mendez-Morales's argument: the Court held that Congress may "mak[e] criminal the violation of an administrative regulation . . . [and] commit[] the determination of the issue of its validity to the agency which created it." 321 U.S. at 444. And <u>McKart</u> is off point -- the Court excused a failure to exhaust administrative remedies that ended with judicial review. 395 U.S. at 187, 203. Failure to exhaust is not an issue in this case.

We share the Supreme Court's concern with a regulatory regime that makes an administrative order not subject to judicial review conclusive proof of an element of the crime in a subsequent criminal prosecution. <u>See generally</u> <u>United States v.</u>

Spector, 343 U.S. 169, 177-79 (1952) (Jackson, J., dissenting). Here, Congress has eliminated direct judicial review of some deportation orders entered after civil administrative proceedings; the Due Process Clause does not bar that. See INS v. St. Cyr, 533 U.S. 289, 345-46 (2001) (Scalia, J., dissenting). The criminal statute then allows a collateral attack on only some of the deportation orders not subject to judicial review, those orders resulting from "deportation proceedings [that] improperly deprived the alien of the opportunity for judicial review." 8 U.S.C. § 1326(d)(2). Though that limitation tracks the Supreme Court's decision in Mendoza-Lopez, we think the Court might well extend the constitutional principle recognized in Mendoza-Lopez to § 1326 prosecutions in which judicial review of the deportation order was barred by statute. However, absent a due process deprivation by the agency,[2] we conclude the Court would not automatically bar the § 1326 prosecution. Rather, it would require that "an alternative means of obtaining judicial review must be made available before the [deportation] order may be used to establish conclusively an element of a [§ 1326] criminal offense." Mendoza-Lopez, 481 U.S. at 838.

One such alternative means would be a petition for a writ of habeas corpus, a remedy Mendez-Morales did not pursue. See Calcano-Martinez v. INS, 533 U.S. 348, 351-52 (2001). Assuming his failure to seek habeas relief does not give rise to a procedural bar, the district court in the subsequent § 1326 prosecution may cure any due process concern over the lack of direct judicial review by reviewing the merits of the deportation order prior to its use in the criminal trial, adopting the standard of review applied by this court when we review a comparable deportation order. See Mendoza-Lopez, 481 U.S. at 839.

---

[2]"Deprivation of judicial review does not equate to a fundamentally unfair administrative hearing. Rather . . . fundamental fairness and judicial review are separate elements under Mendoza-Lopez and § 1326(d)." United States v. Wilson, 316 F.3d 506, 515 (4th Cir. 2003) (Motz, J., concurring).

When the statute provides for judicial review, we review the BIA's discretionary denial of a waiver of inadmissibility for abuse of discretion. "The BIA has abused its discretion if the decision is without rational explanation, departs from established policies, or individually discriminates against a particular race or group." Izedonmwen v. INS, 37 F.3d 416, 418 (8th Cir. 1994) (quotation omitted). In this case, Mendez-Morales was convicted by a Nebraska jury of first degree sexual assault of a thirteen-year-old victim. During a pretrial polygraph examination, he admitted having sexual intercourse with the victim. But at his deportation hearing, he denied having sexual intercourse, asserting that the polygraph examiner had moved the polygraph needles with his fingers to compel incriminating responses. The immigration judge found this testimony not credible. Though the immigration judge and the BIA found that Mendez-Morales was eligible for adjustment of status and a waiver of inadmissibility because deportation would cause extreme hardship to his family, they denied this discretionary relief because the crime was serious and Mendez-Morales appeared to blame the victim instead of showing remorse and rehabilitation. Mendez-Morales asserts that the BIA gave too much weight to the seriousness of his crime and his lack of remorse and rehabilitation. But it is the BIA's task to weigh the relevant factors and exercise its discretion. The reviewing court's task is only to ensure that discretion was in fact exercised and was not exercised in an arbitrary and capricious manner. See Izedonmwen, 37 F.3d at 418; Palmer v. INS, 4 F.3d 482, 486 (7th Cir. 1993). Thus, affording Mendez-Morales a belated appeal from the BIA's deportation order that now underlies his § 1326 prosecution, we conclude that he cannot show an abuse of the BIA's discretion and thus is entitled to no relief from his § 1326 conviction.

2. Alternatively, returning to the Mendoza-Lopez analysis, Mendez-Morales next argues that his deportation proceedings were fundamentally unfair because the immigration judge and the BIA improperly weighed the equities of his claim for discretionary relief, and we denied him judicial review of the merits of that claim. He argues that, if he must show prejudice from the absence of judicial review, he need

only show that he "might have won" his prior appeal.  He further argues that the absence of judicial review of the deportation order may not be cured in a § 1326 criminal proceeding.  His brief succinctly summarizes the contention:  "No judicial review, no prosecution."

Like other circuits, we have consistently held that "an error cannot render a proceeding fundamentally unfair unless that error resulted in prejudice."  Torres-Sanchez, 68 F.3d at 230, citing United States v. Polanco-Gomez, 841 F.2d 235, 237 (8th Cir. 1988); see United States v. Loaisiga, 104 F.3d 484, 487 & n.2 (1st Cir.) (collecting cases), cert. denied, 520 U.S. 1271 (1997).  Prejudice in this context means "a reasonable likelihood that but for the errors complained of the defendant would not have been deported."  United States v. Perez-Ponce, 62 F.3d 1120, 1122 (8th Cir. 1995) (quotation omitted).  Thus, we reject Mendez-Morales's contentions that prejudice need not be shown or may be presumed because he might have won his prior appeal had we considered the deportation order on the merits.  Rather, as the district court recognized, under the prejudice component of the Mendoza-Lopez doctrine we must look at the probable merit of that prior appeal.  As we have explained, Mendez-Morales cannot show that the BIA abused its discretion in entering the deportation order.  Therefore, he "would have had no chance of winning an appeal" and cannot demonstrate the prejudice required to prove that the deportation proceedings were fundamentally unfair under Mendoza-Lopez.  Perez-Ponce, 62 F.3d at 1122 (quotation omitted).

The judgment of the district court is affirmed.

_____