# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 04-4178

_____

United States of America,

        Appellee,

v.

Ernesto Garcia Rodriguez,

        Appellant.

\* \* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the Northern
District of Iowa.

_____

Submitted: June 21, 2005
Filed: August 25, 2005

_____

Before MELLOY, HEANEY, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Ernesto Garcia Rodriguez appeals his conviction for illegal re-entry from Mexico in violation of 8 U.S.C. § 1326. Rodriguez collaterally attacks the prior removal order upon which his conviction is based. For the reasons discussed below, we affirm the judgment of the district court.[1]

---

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

## I. BACKGROUND

Rodriguez, a native and citizen of Mexico, became a legal permanent resident of the United States in 1990. In April 1997, he was arrested in California on a felony charge of driving under the influence of alcohol or drugs.[2] Rodriguez pled guilty to the charge. At the time of his plea, Rodriguez understood that the conviction would cause him to be deported.

On January 4, 1999, Rodriguez appeared before an immigration judge ("IJ") for a deportation hearing. The IJ advised him of his right to counsel and his right to appeal the decision of the IJ to the Board of Immigration Appeals (BIA). The IJ ordered Rodriguez to be deported to Mexico as an aggravated felon. Rodriguez asked the IJ, "If I were to appeal, what are my possibilities of winning?" The IJ replied,

> Well, the appeals court made a ruling that . . . an Arizona statute involving drunk driving is an aggravated felony. They have not specifically ruled on the California statute yet. However, my review of the two statutes shows they are almost identical. In many ways, the Arizona statute is much broader than the California statute, so I can't tell you what they would decide. But it doesn't look good. Otherwise, I would give you an option. I don't like deporting people away from their families unless the law very clearly applies. I have a family myself and I wouldn't want to be deported either. So I take those things in consideration. Would you like to appeal my decision or would you like to accept it?

Rodriguez then asked how long an appeal would take. The IJ responded "around six to twelve months." Rodriguez asked whether he could move his case to Iowa. The IJ explained that there is no immigration court in Iowa and that the closest

---

[2]Rodriguez already had eight previous convictions for driving under the influence of alcohol from July 1990 through January 1996.

one to Iowa would probably be Omaha or Chicago. Rodriguez asked if he could move the case to one of those locations. The IJ responded that there was no reason to address a change of case location unless, on appeal, the BIA found a reason to remand for further proceedings. Next, Rodriguez asked whether the IJ could give him voluntary departure. The IJ explained that "under the law you are not eligible for voluntary departure because your crime is classified as an aggravated felony." The IJ also discussed the possibility of adjustment of status if Rodriguez were to marry his girlfriend, a United States citizen. Finally, the IJ asked, "Would you like to reserve your right of appeal or do you want to accept the decision I have made today?" Rodriguez responded, "I accept your decision." He was then deported to Mexico. Had Rodriguez appealed his decision to the BIA and received an unfavorable decision, he could have obtained judicial review in a federal court of appeals.

In May 2001, Rodriguez illegally re-entered the United States. In July 2003, he was discovered in Iowa due to an arrest for operating a motor vehicle while intoxicated or drugged. Rodriguez was indicted on one count of illegal re-entry in violation of 8 U.S.C. § 1326. He agreed to a bench trial pursuant to Fed. R. Crim. P. 23(a). At trial, Rodriguez collaterally attacked his 1999 deportation order, claiming a due process defect because the IJ allegedly misinformed him in a way that led him not to appeal the order. The district court found that no defect prevented Rodriguez from appealing the 1999 deportation order. Consequently, the district court pronounced Rodriguez guilty of illegal re-entry. He was sentenced to 30 months' imprisonment. Rodriguez appeals, arguing that the district court erred in rejecting his collateral attack on the 1999 deportation order.

## II.    DISCUSSION

We review the district court's findings of fact for clear error, but we review de novo whether those facts establish a due process defect. *United States v. Torres-*

*Sanchez*, 68 F.3d 227, 229 (8th Cir. 1995). An alien's ability to collaterally attack a deportation order in a criminal proceeding under 8 U.S.C. § 1326 is governed by subsection (d) of that statute:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order . . . unless the alien demonstrates that–
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).

We have recognized subsection (d) as a codification of *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987), which established due process requirements for the application of § 1326. *United States v. Mendez-Morales*, 384 F.3d 927, 928-29 (8th Cir. 2004). Under *Mendoza-Lopez*, consistent with § 1326(d), an alien must show that "(1) an error in the deportation proceedings rendered the proceedings fundamentally unfair in violation of due process, *and* (2) the error functionally deprived the alien of the right to judicial review." *Mendez-Morales*, 384 F.3d at 929 (quoting *Torres-Sanchez*, 68 F.3d at 230). An error cannot render the proceedings fundamentally unfair unless it resulted in actual prejudice. *Torres-Sanchez*, 68 F.3d at 230. "Actual prejudice exists where defects in the deportation proceedings 'may well have resulted in a deportation that would not otherwise have occurred.'" *Id.* (quoting *United States v. Santos-Vanegas*, 878 F.2d 247, 251 (8th Cir. 1989)).

Rodriguez argues that he was deprived of judicial review. He contends he waived his right to appeal to the BIA only after he was "materially misinformed" by the IJ that the appeals court would most likely consider drunk driving to be an

aggravated felony. Subsequent Ninth Circuit and Supreme Court rulings held that drunk driving is not a crime of violence and thus not an aggravated felony for immigration law purposes. *See Leocal v. Ashcroft*, 125 S. Ct. 377 (2004); *United States v. Trinidad-Aquino*, 259 F.3d 1140 (9th Cir. 2001).

Rodriguez relies upon *Mendoza-Lopez*, in which an IJ failed to adequately inform aliens of their eligibility for suspension of deportation before accepting the aliens' waiver of their right to appeal a deportation order. 481 U.S. at 831 & n.3. The aliens were later charged under § 1326 with illegal re-entry, and they collaterally attacked the deportation order. The Supreme Court held that "[b]ecause the waivers of their rights to appeal were not considered or intelligent, [the aliens] were deprived of judicial review of their deportation proceeding." *Id.* at 840.

The IJ's statements to Rodriguez regarding his chances on appeal do not implicate the holding of *Mendoza-Lopez*. The aliens in *Mendoza-Lopez* could not make a considered and intelligent waiver of their right to appeal because they were not adequately informed of their eligibility for an existing form of statutory relief. In contrast, Rodriguez argues only that the IJ did not adequately inform him of a future change in the interpretation of the law. A subsequent change in the law does not render Rodriguez's waiver of his right to appeal "not considered or intelligent." *Id.* at 840; *see United States v. Killgo*, 397 F.3d 628, 629 n.2 (8th Cir. 2005) (explaining that a failure to anticipate a change in the law does not place that change outside the scope of a waiver of the right to appeal).

The record demonstrates that Rodriguez was aware of and understood his right to appeal.[3] In response to a question from Rodriguez regarding his chances on

---

[3]The dissent relies on *Santos-Vanegas* to reach a different result. However, *Santos-Vanegas* is distinguishable on its facts. Santos-Vanegas, who "spoke no English and could not read or write in any language," filed an appeal with the BIA with the assistance of an INS employee. 878 F.2d at 249. His statements in the

appeal, the IJ discussed the current law on drunk driving as an aggravated felony and concluded, "I can't tell you what they would decide. But it doesn't look good." This in no way deprived Rodriguez of his known right to present his case to the BIA and, if unsuccessful there, to a court of appeals. Therefore, Rodriguez has not shown that an error in the proceeding before the IJ functionally deprived him of the right to judicial review. *Mendez-Morales*, 384 F.3d at 929. Rodriguez's attempt to collaterally attack the 1999 deportation order fails.

## III.   CONCLUSION

Because Rodriguez does not meet the requirements to collaterally attack his 1999 deportation order under 8 U.S.C. § 1326(d), we affirm his conviction for illegal re-entry from Mexico.

---

Notice of Appeal "reveal[ed] the defendant's confusion about the deportation order issued by the ILJ and its consequences." *Id.* at 250. The BIA denied his appeal, the deportation notice he received six days later "did not in any way indicate that he could pursue further appeal in the federal courts,"and "[n]either had the ILJ or anyone else earlier advised him of any opportunity to appeal beyond the administrative level." *Id.* Because Santos-Vanegas's actions demonstrated that he had no intention of waiving his right to appeal, we held that "[t]he government ought to have told the defendant of his opportunity to pursue *further* challenge in federal court." *Id.* at 251 (emphasis added).

In the instant case, by contrast, Rodriguez demonstrated no confusion about the deportation order and its consequences. At a minimum, he was aware that he had a right to challenge that order with an appeal to the BIA, and he knowingly waived that right. No right to petition for review in federal circuit court arises unless an alien first appeals to the BIA. *See* 8 U.S.C. § 1252(d)(1). Unlike Santos-Vanegas, Rodriguez chose to waive his right of appeal.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. Having carefully reviewed the record, I conclude that Rodriguez did not make a knowing and intelligent waiver of his right to appeal. The IJ's acceptance of his waiver therefore resulted in a deprivation of Rodriguez's right to judicial review. I arrive at this conclusion for two reasons.

First, our court has unambiguously held that an alien's waiver of his appellate rights cannot be knowing or intelligent if the alien is not advised "of his right to appeal the administrative decision in federal court." *United States v. Santos-Vanegas*, 878 F.2d 247, 251 (8th Cir. 1989). At Rogriguez's deportation hearing, the IJ advised the respondents as a group that they would have a right to appeal to the BIA if they disagreed with his decision. The IJ also asked Rodriguez individually if he wanted to reserve his right to appeal or accept the decision made by the IJ. At no point in the hearing, however, did the IJ inform Rodriguez or the other respondents that they would have the right to judicial review, as opposed to administrative review.[4]

The failure of the IJ to inform Rodriguez of his right to appeal to the federal courts before accepting his waiver of his right to appeal was sufficient in itself to deprive Rodriguez of an opportunity for meaningful review. This omission is more serious because the IJ's other comments suggest that he could be relied upon to provide a comprehensive assessment of the respondent aliens' legal rights and options. In his initial remarks to the respondent aliens, the IJ clarified:

---

[4]While the IJ stated that "the appeals court made a ruling" that drunk driving is an aggravated felony, this was a reference to a BIA decision, *In Re Carlos Istalin Magallanes-Garcia*, 22 I. & N. Dec. 1(1998). The Ninth Circuit addressed this question more than two years after Rodriguez's hearing before the IJ. *See United States v. Trinidad-Aquino*, 259 F.3d 1140 (9th Cir. 2001).

[C]ontrary to popular belief, I do not work for the Immigration Service. The purpose of today's hearing is for me to determine the validity of the charges made against you by the Immigration Service. If the charges turn out to be invalid, I will dismiss the case against you. And even if the charges are valid, there are some times [sic] ways to avoid deportation in the immigration laws. That will depend on the facts of your case. Once I know more about your case, I will let you know if you are eligible to avoid deportation or not.

Later, addressing Rodriguez's request for voluntary departure, he stated: "You are not eligible for anything, not a single thing." These comments are troubling both because they create the impression that the IJ would be offering legal advice to the respondents, and because the assessment the IJ made of Rodriguez's case was incomplete if not incorrect.

The IJ's comments were based on the assumption that Rodriguez's conviction for driving under the influence of alcohol was an aggravated felony. Because this conclusion was consistent with recent BIA determinations, the IJ also advised Rodriguez that any appeal was not likely to succeed. By omitting any mention of a potential appeal to the federal courts, the IJ created the impression that the issue was firmly settled, when, in fact, the Ninth Circuit had not yet addressed the matter. The Ninth Circuit and Supreme Court subsequently determined that driving under the influence was not an aggravated felony. *Leocal v. Ashcroft*, 125 S. Ct. 377 (2004); *United States v. Trinidad-Aquino*, 259 F.3d 1140 (9th Cir. 2001). This is more than a mere failure to anticipate a future change in the interpretation of the law;[5] it is a

_____

[5]In some cases an IJ's failure to anticipate a change in interpretation has been held to invalidate a waiver of appellate rights. However, this issue has not been treated consistently throughout the circuits. *Compare United States v. Calderon*, 391 F.3d 370 (2d Cir. 2004) (holding that failure to advise an eligible alien of the possibility of relief under § 212(c) invalidated a waiver of appeal rights even though the BIA believed such relief was statutorily barred and the Supreme Court had not yet ruled on the issue), *United States v. Ubaldo-Figueroa*, 364 F.3d 1042 (9th Cir. 2004)

failure to adequately advise Rodriguez of his current appellate rights. In this group proceeding the IJ had "an affirmative obligation . . . to advise [Rodriguez] effectively of his . . . right to judicial review of deportation proceedings," an obligation which is heightened, not diminished, by Rodriguez's decision to proceed without counsel. *Santos-Vanegas*, 878 F.2d at 251. Rodriguez should have been informed of his opportunity to appeal his deportation order in federal court. I would therefore hold that Rodriguez was deprived of the right to judicial review.

_____

(same), *and United States v. Pallares-Galan*, 359 F.3d 1088 (9th Cir. 2004) (holding that alien's waiver of appellate rights was not considered or intelligent where the IJ did not inform him of his eligibility for relief from deportation because she believed the alien had been convicted of an aggravated felony) *with United States v. Aguirre-Tello*, 353 F.3d 1199 (10th Cir. 2004) (en banc) (holding that an alien did not have a constitutional right to be informed of discretionary relief he or she may be eligible for) *and United States v. Roque-Espinoza*, 338 F.3d 724 (7th Cir. 2003) (suggesting that an alien was not deprived of the right to judicial review where the IJ failed to inform him of his eligibility for relief under § 212(c)).