# United States Court of Appeals
### For the Eighth Circuit

_____

No. 18-3363
_____

United States of America

*Plaintiff - Appellee*

v.

Jesus Pineda Ramirez

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: September 27, 2019
Filed: June 25, 2020

_____

Before LOKEN, COLLOTON, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Jesus Pineda Ramirez appeals his conviction for illegal reentry after removal, 8 U.S.C. §§ 1326(a) & (b)(2). He argues his removal was invalid because the Government never explained its intent to remove him in Spanish and, as a result, he was denied the opportunity to challenge his status as an aggravated felon and to seek pre-conclusion voluntary departure under 8 U.S.C. § 1229c(a)(1). Because we agree

with the district court[1] that it was not reasonably likely that an Immigration Judge would have granted his request for voluntary departure, we affirm.

I.

Pineda Ramirez, a Mexican citizen, came to the United States illegally between 1993 and 1995 and settled in North Carolina. He spoke little English. In 2005, he was convicted of two counts of "assum[ing] the position of a parent in the home of a minor victim [and] engag[ing] in vaginal intercourse . . . with [that] victim," N.C. Gen. Stat. § 14-27.7, and was sentenced to 25 to 39 months in prison.

While in prison, Pineda Ramirez received a visit from an immigration enforcement officer. Because he was not a legal permanent resident and because the officer determined that Pineda Ramirez's convictions were aggravated felonies under 8 U.S.C. § 1101(a)(43), the officer found him eligible for expedited removal under 8 U.S.C. § 1228(b) and gave him a "Notice of Intent to Issue a Final Administrative Removal Order" in English. The notice indicated that Pineda Ramirez had "been convicted of an aggravated felony" and that he "waive[d] [the] right to . . . contest the above charges." A checked box further indicated that a translator had "explained and/or served this Notice of Intent to the alien in the Spanish language," but the two lines where the interpreter was supposed to put his or her information were blank. Pineda Ramirez was removed in February 2008.

Almost ten years later, the Government discovered Pineda Ramirez in Iowa and charged him with illegal reentry after removal in violation of 8 U.S.C. §§ 1326(a) & (b)(2). He moved to dismiss his indictment under 8 U.S.C. § 1326(d) because the Notice of Intent prior to his 2008 removal was never explained to him in Spanish. He argued that he was prejudiced because this prevented him from challenging the

---

[1] The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa.

Government's decision to classify him as an aggravated felon, and therefore deprived him of the opportunity to seek voluntary departure instead of being removed by the Government.

The district court denied Pineda Ramirez's motion, holding that he failed to satisfy § 1326(d)'s third requirement for a collateral attack against an underlying order of removal: that the "entry of [his removal] order [had been] fundamentally unfair." The court noted that an error cannot render a proceeding fundamentally unfair unless that error resulted in prejudice. And, even assuming he was not an aggravated felon, due to the serious nature of Pineda Ramirez's criminal convictions and the absence of equities in his favor, it was not reasonably likely that an Immigration Judge would have granted him pre-conclusion voluntary departure.

Following the court's decision, Pineda Ramirez pleaded guilty and the district court sentenced him to 15 months in prison. On appeal, he argues that the district court erred when it denied his motion to dismiss his indictment because he had failed to show prejudice under § 1326(d)(3). We have jurisdiction under 28 § U.S.C. 1291.

II.

Because Pineda Ramirez makes a collateral attack on his 2008 removal, he must satisfy § 1326(d)(3). Like the district court, we turn to voluntary departure because we believe it is dispositive.[2] The question is: assuming that Pineda Ramirez was not an aggravated felon, was he reasonably likely to have received pre-conclusion voluntary departure at the time of his removal in 2008?

---

[2] Like the district court, we decline to reach Pineda Ramirez's argument that his North Carolina convictions did not qualify as aggravated felonies because the age of majority for his offense differed from the generic federal definition of "sexual abuse of a minor" under 8 U.S.C. § 1101(a)(43)(A).

When reviewing a motion to dismiss an indictment under § 1326(d), we apply a clear error standard to the district court's findings of fact, but we review *de novo* whether the facts establish a due process defect. *United States v. Rodriguez*, 420 F.3d 831, 833 (8th Cir. 2005) (noting that § 1326(d) codified *United States v. Mendoza–Lopez*, 481 U.S. 828 (1987), "which established due process requirements for the application of § 1326"). The defendant bears the burden to prove § 1326(d)'s requirements. *United States v. Tamayo-Baez*, 820 F.3d 308, 313 (8th Cir. 2016).

We first address the standard for showing prejudice. Pineda Ramirez cites cases stating that prejudice arises when "the outcome of the proceeding may well have been different had there not been any procedural irregularities." *United States v. Yan Naing*, 820 F.3d 1006, 1010 (8th Cir. 2016) (citation omitted); *see also Rodriguez*, 420 F.3d at 834. He argues that this standard controls notwithstanding other cases stating that "[p]rejudice in the § 1326(d) context means 'a reasonable likelihood that but for the errors complained of the defendant would not have been deported.'" *United States v. Mendez-Morales*, 384 F.3d 927, 931–32 (8th Cir. 2004) (quoting *United States v. Perez-Ponce*, 62 F.3d 1120, 1122 (8th Cir. 1995)). The Government counters that there is no difference between these standards but that, even if there is, "reasonable likelihood" controls.

Though some of our cases use the "may well have been" language, the correct standard in the § 1326(d) context is "reasonable likelihood." Our earliest case discussing reasonable likelihood points to the connection between § 1326(d) and collateral attacks against criminal convictions. *Perez-Ponce*, 62 F.3d at 1122 (citing *United States v. Encarnacion-Galvez*, 964 F.2d 402, 407 (5th Cir. 1992)); *accord United States v. Copeland*, 376 F.3d 61, 73 (2nd Cir. 2004) (suggesting that "[t]his analogy is close-fitting"). Those cases use the "reasonable likelihood" test. *See Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (discussing reasonable likelihood in the *Strickland v. Washington* context). This standard has been adopted

by nearly every circuit to address the question, and no other circuit uses a "may well have been different" standard.[3]

To be eligible for pre-conclusion voluntary departure, an alien must be able to pay for the costs of returning to his or her home country, not have committed an aggravated felony or terrorism related crime, and not have previously received a grant of voluntary departure. 8 U.S.C. § 1229c(a)(1) & (c); 8 C.F.R. § 1240.26 (listing additional procedural prerequisites). Even where these requirements are met, the decision to grant voluntary departure rests in the discretion of the Immigration Judge, who weighs the alien's negative and positive equities. *See United States v. Rojas-Pedroza*, 716 F.3d 1253, 1264-65 (9th Cir. 2013). Negative equities include "the nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and other evidence of bad character or the undesirability of the applicant as a permanent resident." *In re Arguelles-Campos*, 22 I. & N. Dec. 811, 817 (BIA 1999). Positive equities are "compensating elements such as long residence here, close family ties in the United States, or humanitarian needs." *Id.*

Pineda Ramirez argues that he could have demonstrated positive equities had he been given the chance and that even individuals with significant criminal histories have been granted voluntary departure. *See, e.g., In re Bacilio Hernandez-Garcia*, 2012 WL 1705671 (BIA Apr. 11, 2012) (unpublished); *In re Rumualdo Moreno Bacahui*, 2010 WL 5635608 (BIA Dec. 30, 2010) (unpublished); *In re Luis Alonzo Gonzales-Figeroa*, 2006 WL 729784 (BIA Feb. 10, 2006) (unpublished). He also

---

[3] *See United States v. Loaisiga*, 104 F.3d 484, 487 (1st Cir.1997); *Copeland*, 376 F.3d at 73; *United States v. Charleswell*, 456 F.3d 347, 361–62 (3d Cir. 2006); *United States v. Villarreal Silva*, 931 F.3d 330, 337 (4th Cir. 2019); *United States v. Cordova-Soto*, 804 F.3d 714, 719 (5th Cir. 2015); *United States v. Aguirre-Tello*, 353 F.3d 1199, 1209 (10th Cir. 2004); *but see United States v. Valdez-Novoa*, 780 F.3d 906, 914–17 (9th Cir. 2015) (using a "plausibility" standard).

offers an affidavit from an immigration lawyer who opines that "assuming [Pineda Ramirez] was able to show positive equities to an Immigration Judge, to offset his two convictions . . . he would have had plausible grounds for pre-conclusion voluntary departure in 2008." D. Ct. Dkt. 26-6 at 3.

Pineda Ramirez must show more than "plausible grounds" for voluntary departure, he must show that this result would have been "reasonably likely." He does not meet this bar for at least two reasons. First, aliens that receive voluntary departure despite having a criminal history invariably present compelling positive equities, like close relatives who are U.S. citizens or legal permanent residents. *See In re Bacilio Hernandez-Garcia*, 2012 WL 1705671, at \*1 (respondent was married to a U.S. Citizen and had a 4-year-old U.S. citizen child); *In re Rumualdo Moreno Bacahui*, 2010 WL 5635608, at \*2 (respondent was married to a U.S. Citizen who had applied for an I-130 visa for him); *In re Gonzales-Figeroa*, 2006 WL 729784, at \*1 (respondent had a sister and two nieces who were U.S. citizens and supported his mother who was a legal permanent resident). Pineda Ramirez has not identified close relatives in the United States or other similar positive equities.

Second, Pineda Ramirez fails to reference a single case where an alien convicted of a felony sexual offense has received pre-conclusion voluntary departure. The only case that even approaches this is *In re Joseph Tan Villalongja Mante*, 2007 WL 1676929 (BIA May 18, 2007) (unpublished), which involved an alien who had been convicted of felony sexual battery and sentenced to six months' probation. But the Board of Immigration Appeals did not grant voluntary departure in that case or suggest that such relief was warranted, it merely remanded the case to the Immigration Judge to address the voluntary departure question in the first instance.

Considering Pineda Ramirez's serious and recent felony convictions and the lack of a sufficiently compelling counter-balancing factor at the time of his removal, we conclude that it is not reasonably likely that he would have received pre-

conclusion voluntary departure.  Pineda Ramirez therefore cannot show prejudice as required by 8 U.S.C. § 1326(d)(3).  The district court properly denied his motion to dismiss his indictment.

III.

The judgment of the district court is affirmed.

_____